**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
DEBORAH SYKES,                    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        1:19CV1082
                                  )
ANDREW M. SAUL,                   )
Commissioner of Social Security,  )
                                  )
                Defendant.        )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Deborah Sykes, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.)  Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum); see also Docket Entry 15 (Plaintiff's Reply).  For the reasons that follow, the Court should remand this matter for further administrative proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 275-83) and, upon denial of that application initially (Tr. 74-87, 104-08) and on reconsideration (Tr. 88-103, 110-14), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 115).

Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 39-73.) Towards the end of the hearing, the ALJ determined that, due to outstanding medical evidence not yet in the record, he would propound post-hearing interrogatories to the VE following receipt of that evidence (see Tr. 69-70). After incorporation of that evidence into the record (see Tr. 1243-1311), the ALJ sent the VE written interrogatories (Tr. 377-80), the VE provided testimony via written responses to the interrogatories (id.), and Plaintiff responded (Tr. 384; see also Tr. 381-82 (ALJ's service of VE's written testimony on Plaintiff's counsel)). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 20-32.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 8-13, 274, 385-86), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings:

1. [Plaintiff] has not engaged in substantial gainful activity since February 9, 2017, the application date.

. . .

2. [Plaintiff] has the following severe impairments: Lumbar degenerative disc disease, cervical degenerative disc disease, Arnold-Chiari malformation, carpal tunnel syndrome, and Prinzmetal angina.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

2

the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

4. [Plaintiff] has the residual functional capacity to
perform light work . . . except [she] could only
occasionally balance, stoop, kneel, crouch, and crawl,
and occasionally climb ramps or stairs. Additionally,
[she] could never climb ladders, ropes, or scaffolds.
Moreover, [she] can frequently handle and finger with the
right (dominant) upper extremity. Furthermore, [she]
should never work in an area that has concentrated
exposure to heat or cold or in an area that has
concentrated exposure to humidity and wetness. Finally,
[she] must be in a position that, in addition to normal
breaks, would allow the person to stand for 5 minutes
after sitting for 30 minutes throughout the day but while
remaining at the workstation.

. . .

5. [Plaintiff] has no past relevant work.

. . .

9. Considering [Plaintiff]'s age, education, work
experience, and [RFC], there are jobs that exist in
significant numbers in the national economy that [she]
can perform.

. . .

10. [Plaintiff] has not been under a disability, as
defined in the . . . Act, since February 9, 2017, the
date the application was filed.

(Tr. 24-32 (bold font and internal parenthetical citations

omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security

Commissioner's denial of social security benefits." Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

3

of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

4

adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-

---

[1] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

5

vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in
(continued...)

7

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to either accord substantial weight to the favorable Medicaid [(hereinafter 'NCDHHS')] decision or provide specific, persuasive and valid reasons for not doing so" (Docket Entry 12 at 4 (bold font and single-spacing omitted));

2) "[t]he ALJ failed to adequately explain the basis for his RFC assessment" (id. at 9 (bold font omitted)); and

3) "[t]he ALJ erred by failing to evaluate Listing 1.04A in violation of *Radford*[ *v. Colvin*, 734 F.3d 288 (4th Cir. 2013)]" (id. at 16 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 4-21.)

### 1. NCDHHS Decision

In Plaintiff's first assignment of error, she maintains that "[t]he ALJ erred by failing to either accord substantial weight to the favorable [NCDHHS] decision or provide specific, persuasive and valid reasons for not doing so" in violation of Woods v. Berryhill, 888 F.3d 686 (4th Cir. 2018). (Docket Entry 12 at 4 (bold font and

---

[4] (...continued)
the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

single-spacing omitted).) More specifically, Plaintiff argues that the "ALJ cannot accord less weight to an NCDHHS . . . decision simply because they utilize different rules or are not binding on SSA as this 'generic explanation, which could apply to every [] decision, is neither persuasive nor specific.'" (Id. at 7 (quoting Woods, 888 F.3d at 693, and citing Pridgen v. Colvin, No. 4:15CV95, 2016 WL 4047058, at *3-4 (E.D.N.C. Jun. 30, 2016) (unpublished), recommendation adopted, 2016 WL 4046763 (E.D.N.C. Jul. 27, 2016) (unpublished), and Northen v. Colvin, No. 1:15CV445, 2016 WL 5956636, at *5 (M.D.N.C. Oct. 12, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 9, 2016) (Schroeder, J.)).) Plaintiff additionally contends that "the ALJ's statement that[,] 'to the extent the [NCD]HHS decision suggests greater limitations than found [in the RFC,] this rating is inconsistent with the evidence as a whole per the [ALJ's] discussion [of the medical evidence]' is completely conclusory without any citation to specific pieces of evidence which are inconsistent with the NCDHHS decision and without explaining how such evidence undercuts the NCDHHS decision." (Id. at 7-8 (quoting Tr. 31, and citing Sabourin v. Saul, No. 5:18CV410, at 7 (E.D.N.C. Jul. 15, 2019) (unpublished), Miles v. Saul, No. 5:18CV422, at 12 (E.D.N.C. Sept. 6, 2019) (unpublished))). According to Plaintiff, "[t]he ALJ engaged in no substantive analysis of [the] NCDHHS decision and thus, the ALJ's decision must be vacated and the claim

remanded for compliance with *Woods*." (Id. at 9.) Plaintiff's contentions have merit and warrant remand.

The United States Court of Appeals for the Fourth Circuit addressed for the first time the "weight that the SSA must afford to a VA disability rating" in Bird v. Commission of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012). In that case, after reviewing the "varying degrees of evidentiary significance" other circuits afford VA disability ratings, the Fourth Circuit held as follows:

> The VA rating decision reached in [the plaintiff's] case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the VA. Like the VA, the SSA was required to undertake a comprehensive evaluation of [the plaintiff's] medical condition. Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

Bird, 699 F.3d at 343 (emphasis added).

Following Bird, the Fourth Circuit further clarified "what an ALJ must do" to clearly demonstrate the appropriateness of a deviation from Bird's substantial weight standard in a case involving an NCDHHS disability determination:

10

>     We now conclude, consistent with our sister circuits,
>     that in order to demonstrate that it is "appropriate" to
>     accord less than "substantial weight" to an NCDHHS
>     disability decision, an ALJ must give <u>persuasive,
>     specific, valid reasons for doing so that are supported
>     by the record</u>."

<u>Woods</u>, 888 F.3d at 692 (quoting <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002)) (emphasis added); <u>see also</u> Social Security Ruling 06-03p, <u>Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939, at *6-7 (Aug. 9, 2006) ("SSR 06-03p") ("[E]vidence of a disability decision by another governmental . . . agency cannot be ignored and must be considered," and "the [ALJ] should explain the consideration given to these decisions in the notice of decision").[5]

In this case, the NCDHHS issued a disability determination on December 4, 2017, reversing the decision of the Randolph County Department of Social Services, and finding that Plaintiff qualified

---

[5] For claims filed on or after March 27, 2017, the SSA has rescinded SSR 06-03p and amended 20 C.F.R. §§ 404.1504 and 416.904. <u>See</u> 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). The new regulations state that the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits," 20 C.F.R. § 416.904. In rescinding SSR 06-03p, the SSA noted that, for claims filed on or after March 27, 2017, ALJs "will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive." 82 Fed. Reg. 15263-01. Because Plaintiff filed her claims for SSI in February 2017 (<u>see</u> Tr. 275-83), this Recommendation will apply SSR 06-03p and the prior version of Section 416.904 to Plaintiff's contentions in her first assignment of error.

as disabled as of May 2017.  (See Tr. 367-69.)  In support of that

finding, the NCDHHS provided the following analysis:

> [Plaintiff]'s ability to perform work at all exertional
> levels has been compromised by the need to alternate
> sitting and standing to the point that these limitations
> so narrow the range of work [Plaintiff] might otherwise
> perform that a finding of "disabled" is appropriate <u>under
> the framework of section 204.00 in the Medical-Vocational
> Guidelines in accordance with Social Security Rulings
> 96-8p and 96-9p</u> in which the inability to work
> consistently for eight hours of an eight hour workday
> without alternating standing and walking that could not
> be accommodated by scheduled breaks and a lunch period
> would severely erode the occupational base at all
> exertional levels.

(Tr. 369 (emphasis added).)  The ALJ analyzed and weighed the

NCDHHS's determination as follows:

> The [ALJ] gives little weight to the [NCDHHS] decision of
> record . . ., indicating a finding of disability as of
> December 4, 2017. <u>[NCD]HHS decisions utilize standards
> for determining disability that are different from those
> used by the [SSA]</u>, and the ultimate issue of disability
> is one reserved solely to the Commissioner of Social
> Security. Further, to the extent the [NCD]HHS decision
> suggests greater limitations than found above this rating
> is inconsistent with the evidence as a whole per the
> above discussion (Ex.14F, Ex.20F, Ex.21F, Ex.22F, and
> Ex.31F).  Therefore, the [ALJ] gives these findings
> little weight.

(Tr. 30-31 (emphasis added).)

The ALJ's consideration of the NCDHHS's disability

determination runs afoul of <u>Woods</u>.  To begin, the ALJ's statement

that the NCDHHS's disability determination "utilize[d] standards

for determining disability that [we]re different from those used by

the [SSA]" (Tr. 30) disregards the fact that, as emphasized above,

the NCDHHS <u>expressly relied upon the SSA's standards for disability</u>

12

in its decision (see Tr. 369). Further, in <u>Woods</u>, the Fourth
Circuit explicitly rejected the ALJ's discounting of an NCDHHS
disability determination because the determination did not bind the
Commissioner and because that agency utilized different disability
standards, noting that such a "generic explanation, which could
apply to every NCDHHS decision, [wa]s neither persuasive nor
specific." <u>Woods</u>, 888 F.3d at 693; <u>see also</u> <u>Northen</u>, 2016 WL
5956636, at *5 ("As this Court has previously explained, citing to
different rules and different standards as a rationale to give less
than substantial weight to a VA disability determination is not
enough, because such a rationale would apply to every case, and
thus cannot clearly demonstrate a reason for departing from the
*Bird* presumption.").

Moreover, the ALJ's reliance upon the SSA's rule that the
"ultimate issue of disability is one reserved solely to the
Commissioner" (Tr. 30), <u>see</u> 20 C.F.R. § 416.927(d), does not supply
a "persuasive, specific, valid reason[]" for deviating from the
substantial weight standard. Although that rule supports the ALJ's
decision to accord "little weight" (Tr. 30) to the NCDHHS's
ultimate determination that Plaintiff qualified as disabled (see
Tr. 369), it did not authorize the ALJ to disregard the NCDHHS's
specific findings that Plaintiff "retain[ed] the ability to engage
in less than sedentary work" (Tr. 368), that, "[d]ue to the
severity of her pain, she [wa]s not able to be up and about to

13

manage her daily activities" (id.), and that her "ability to perform work at all exertional levels ha[d] been compromised by the need to alternate sitting and standing . . . that could not be accommodated by scheduled breaks and a lunch period" (Tr. 369).

The Commissioner "acknowledges that the ALJ's statement that the [NCDHHS] 'utilize[s] standards for determining disability that are different from those used by the [SSA]' appears to be unsound" (Docket Entry 14 at 6 (quoting Tr. 30)), but offers "two reasons" why that unsound statement provides "no basis to disturb the ALJ giving little weight to the [NCDHHS] decision" (id.). Neither of those arguments render the ALJ's error harmless.

First, the Commissioner contends that "the Hearing Officer in the [NCDHHS] decision [] did not properly follow Social Security policy" (id.), because she "found that Plaintiff would need to alternate between sitting and standing outside of scheduled breaks and a lunch period" without consulting "a vocational resource . . . to clarify the implications for the occupational base" (id. at 7 (internal quotation marks omitted)). In response, Plaintiff counters that "such an argument would eviscerate the [Fourth Circuit's] holding in *Woods* as it would apply to every case as the NCDHHS does not utilize VEs as ALJ's [sic] in SSA hearings do." (Docket Entry 15 at 1.) Plaintiff "[a]dditionally" deems the Commissioner's "argument [] a post hoc rationalization[,] as the ALJ did not state that the lack of VE consultation at the NCDHHS

14

hearing was why he assigned the determination little weight." (Id. (citing Tr. 30-31).)

The Court need not decide whether the NCDHHS Hearing Officer erred by not consulting a vocational resource before determining that Plaintiff's need to alternate sitting and standing eroded the occupational base to the point of disability (see Tr. 369). Although the ALJ here could have relied on the absence of a vocational resource supporting the Hearing Officer's disability conclusion to reject the NCDHHS decision, the ALJ did not do so, and this Court's "[r]eview of the ALJ's ruling is limited [ ] by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions." Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (unpublished) (Osteen, Jr., C.J.) (citing Securities & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)). "Under th[at] doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency[, and i]f those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" Id. (quoting Chenery, 332 U.S. at 196).

Second, the Commissioner maintains that "the ALJ otherwise provided an adequate explanation for giving little weight to the [NCDHHS] decision" by "specifically discuss[ing] the only medical evidence cited in the [NCDHHS] decision — Plaintiff's May 2017

15

examination with Dr. [James S.] Kramer." (Docket Entry 14 at 8 (citing Tr. 28, 845).) According to the Commissioner, "[t]he ALJ reasonably found that Dr. Kramer's examination supported finding that Plaintiff was limited by cervical and lumbar spine disorders, but not to such an extent that she would be unable to perform a range of light work." (Id. (citing Tr. 27-28, 31); see also id. at 8-9 (noting ALJ's discussion of "mildly" positive straight leg raising test, "mildly decreased" cervical range of motion, normal gait, and normal neurological findings in upper extremities at Dr. Kramer's examination (quoting Tr. 28, and citing Tr. 845)).)

Plaintiff, in turn, faults the Commissioner for "engaging in a post hoc analysis of the evidence which he argues supports the ALJ's decision to give the NCDHHS [decision] little weight" (Docket Entry 15 at 2 (citing Docket Entry 14 at 8-11)), and notes that "the ALJ did not engage in this analysis when evaluating the NCDHHS decision" (id.). Plaintiff urges that, under Woods, "the ALJ does not satisfy his duty to evaluate the NCDHHS decision by simply referring the reader back to his analysis of the underlying medical evidence generally:

> [T]he Commissioner argues that because the ALJ's decision as a whole makes clear that he considered the same evidence on which the NCDHHS decision relied, the ALJ did not need to refer expressly to that evidence in discussing the NCDHHS decision. We cannot agree. It may well be that the ALJ considered this evidence in deciding both which doctors and evidence to credit and whether the NCDHHS decision deserved substantial weight. But meaningful review cannot rest on such guesswork."

(Id. (quoting Woods, 888 F.3d at 693-94).

In <u>Woods</u>, the Fourth Circuit rejected the following analysis offered by the ALJ to support the decision to accord little weight to the NCDHHS disability decision in question:

> The [ALJ] has considered the [NCDHHS's] ruling finding the claimant met the criteria for Medicaid eligibility. However, Social Security Ruling 06-03p states that:
>
>> [a] decision by any other governmental agency about whether you are disabled to [sic] blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.
>
> As such, the [ALJ] assigns this ruling little weight, as each program is independent and distinct enough to make it possible that even a disabled Medicaid recipient can be denied SSA benefits. Moreover, the Medicaid determination specifically states that "this decision in no way affects any pending or future claims for Social Security or [SSI] benefits.

<u>Woods</u>, 888 F.3d at 693 (internal ellipsis and parenthetical citation omitted). Here, the ALJ provided a little more analysis than the ALJ in <u>Woods</u>, i.e., the statement that "to the extent the [NCD]HHS decision suggests greater limitations than found [in the RFC,] this rating is inconsistent with the evidence as a whole per the [] discussion [of the medical evidence] (Ex.14F, Ex.20F, Ex.21F, Ex.22F, and Ex.31F)" (Tr. 30-31), but did not offer <u>any</u> of the analysis argued post hoc by the Commissioner (<u>see</u> Docket Entry 14 at 6-11). Thus, the question before the Court narrows to whether the ALJ's above-quoted statement provides "persuasive, specific, valid reasons for [deviating from the substantial weight

17

standard] that are supported by the record." Woods, 888 F.3d at 692.

As the ALJ's above-quoted statement makes clear, he merely cited to "the evidence as a whole" and entire exhibits as "inconsistent" with the NCDHHS decision, rather than to specific pages (let alone to specific objective medical findings) within those exhibits. (Tr. 30 (emphasis added).) Those exhibits contain findings that lend support to Plaintiff's claim of disabling impairments. (See, e.g., Tr. 845 (Dr. Kramer's 5/24/17 examination noting left hip pain on range of motion), 918 (follow-up examination on 3/6/18 by Dr. Anna Voytek interpreting lumbar MRI as showing "foraminal [herniated nucleus pulposus] at L4-5 to the left compressing the L5 nerve root, but also broad disc bulging at L5-Sl with some bilateral foraminal narrowing" as well as documenting weakness in left hip and foot and decreased reflexes at knees and ankles), 919-20 (lumbar MRI interpreted by Dr. Voytek), 928 (4/19/18 office visit with Dr. Henry A. Pool reflecting his opinion that lumbar MRI showed "significant lumbar disc degeneration and associated disc bulging at L4-5" (emphasis added)), 938 (treatment by Dr. Pool on 12/17/17 recording his interpretation of cervical MRI as reflecting "moderate stable spondylosis above the level of her previous fusion" (emphasis added)), 941-43 (cervical MRI interpreted by Dr. Pool).) The ALJ's citation to those exhibits in only a general fashion (and incorporation of his prior evaluation of that evidence which glossed over the favorable findings listed

18

above (see Tr. 28-30)), does not provide persuasive, specific, or valid reasons for deviating from the substantial weight standard. (See Tr. 30-31.) Moreover, the ALJ did not specifically discuss the facts on which the NCDHHS relied in reaching its disability determination, let alone "explain which aspects of [that] decision he f[ound] not credible and why, describe why he f[ound] other evidence more credible, [or] discuss the effect of any new evidence made available after NCDHHS issued its decision," Woods, 888 F.3d at 692. (See Tr. 30-31.)

In sum, the ALJ's failure to provide "persuasive, specific, valid reasons," Woods, 888 F.3d at 693, for rejecting the NCDHHS's disability determination warrants remand.

## 2. RFC

Next, Plaintiff maintains that "[t]he ALJ failed to adequately explain the basis for his RFC assessment." (Docket Entry 12 at 9 (bold font omitted).) In particular, Plaintiff deems "unclear what the ALJ mean[t] by [finding that Plaintiff could] 'alternate between 5 minutes of standing following 30 minutes of sitting throughout the workday.'" (Id. at 10 (quoting Tr. 30).) According to Plaintiff, if that finding "mean[t] that [Plaintiff] c[ould] sit for 30 minutes, then stand for 5 minutes, then go back to sitting for 30 minutes while staying on task throughout the workday[,] . . . then [Plaintiff] would only be standing for about one hour per day total." (Id. at 10-11.) Plaintiff characterizes that

19

finding as "inconsistent with a light RFC, which requires up to six hours of standing and walking in an eight-hour workday[,] and posits that such a "restriction would equate to less than sedentary exertion." (Id. at 11 (citing, inter alia, 20 C.F.R. § 404.1567(a))).

Plaintiff further points out that, "[e]ven if found capable of the full range of sedentary work, [she] would still be disabled pursuant to the [Medical-Vocational Guidelines] as she has no [past relevant work], turned 50 years old [during the relevant period] and has a high school education without direct entry into skilled work." (Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App'x [2, § ]201.12).) Plaintiff additionally argues that "an unresolved apparent conflict [would then exist] between the interrogatory responses of the [VE] ([Tr.] 378-79) and the [Dictionary of Occupational Titles] ('[DOT]') regarding [Plaintiff's] ability to perform the[] 'light' jobs cited at [s]tep [f]ive of the SEP . . . ([Tr.] 32)." (Docket Entry 12 at 11 (citing Pearson v. Colvin, 810 F.3d 204, 210-12 (4th Cir. 2015), Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of a [VE] and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), DOT, No. 209.587-034 ("Marker"), 1991 WL 671802; No. 222.587-038 ("Router"), 1991 WL 672123; No. 706.684-022 ("Assembler, Small Products I"), 1991 WL 679050 (G.P.O. 4th ed.

20

rev. 1991)).) Plaintiff's contentions do not provide a basis for relief.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 416.969a(c).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . . The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing [RFC] in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p"). Although the ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014), he or she "must both identify evidence that supports his [or her]

21

conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted).

Plaintiff's contention that the ALJ's inclusion in the RFC of an option to alternate 30 minutes of sitting with 5 minutes of standing outside of normal breaks renders the RFC "less than sedentary exertion" (see Docket Entry 12 at 11) misses the mark. Social Security Ruling 83-12, Titles II and XVI: Capability to Do Other Work—the Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work, 1983 WL 31253 (1983) ("SSR 83-12") explains an ALJ's obligations when a claimant's RFC falls between two exertional levels as follows:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work . . ., the occupational base is affected and may or may not represent a significant number of jobs . . . . The [ALJ] will consider the extent of any erosion of the occupational base and a[ss]ess its significance. . . .
>
> Where the extent of erosion of the occupational base is not clear, the [ALJ] will need to consult a vocational resource.
>
> . . .
>
> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. . . . Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work. . . .

22

. . .

> In cases of unusual limitation of ability to sit or
> stand, a V[E] should be consulted to clarify the
> implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *2-4.

Here, the ALJ complied with the above-quoted requirements of

SSR 83-12. In his written interrogatories to the VE, the ALJ posed

the following hypothetical to the VE:

> Assume a hypothetical individual [aged 49 to 50 during
> the relevant period who] has at least a high school
> education/GED and is able to communicate in English . . .
> and has no work experience.
>
> [P]lease assume further that this individual has the
> . . . RFC[] to perform <u>light work as defined in 20 CFR
> 4l6.967(b)</u> except . . . this individual must be in a
> position that, <u>in addition to normal breaks, would allow
> the person to stand for 5 minutes after sitting for 30
> minutes throughout the day but while remaining at the
> workstation</u>.

(Tr. 378 (emphasis added).)[6]   Thus, the ALJ's hypothetical

contemplated an individual who could perform the <u>lifting and

carrying</u> requirements of light work but not the <u>standing and

walking</u> requirements of such work. In response, the VE indicated

that such an individual would remain capable of performing three

different light occupations available in significant numbers in the

national economy. (Tr. 379.) SSR 83-12 requires nothing more of

the ALJ.

---

[6] Section 416.967(b) defines "[l]ight work" as "involv[ing] lifting no more than
20 pounds at a time with frequent lifting or carrying of objects weighing up to
10 pounds." 20 C.F.R. § 416.967(b).

23

In sum, Plaintiff's second assignment of error falls short.[7]

### 3. Listing 1.04A

Lastly, Plaintiff contends that "[t]he ALJ erred by failing to evaluate Listing 1.04A in violation of *Radford*." (Docket Entry 12 at 16 (bold font omitted).) In that regard, Plaintiff argues that, "[d]espite the presence of both cervical and lumbar [degenerative disc disease] with ongoing radiculopathy in the medical record, the ALJ did not even mention, much less evaluate Listing 1.04A in his decision." (Id. (citing Tr. 27).) Plaintiff characterizes that error as "harmful," and contends that "all the criteria of [L]isting [1.04A] are present in [Plaintiff's] medical record." (Id.)

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or

_____

[7] Plaintiff additionally argues that "the ALJ's general statement that [Plaintiff's] conditions had been 'controlled with conservative measures' per the record ([Tr.] 29) is not accompanied by citations to the record noting that her pain levels were adequately controlled with conservative measures such as medication nor is it accompanied by citations to the record indicating that [Plaintiff's] treatment allowed her to function sufficiently to perform tasks as required by the RFC." (Docket Entry 12 at 12.) However, as the Commissioner correctly points out:

> [T]he ALJ's reference that Plaintiff's "impairments remained controlled with conservative treatment measures" is clearly with reference to her cardiovascular impairments and fully supported by the record (Tr. 29). The ALJ made this statement at the end of a paragraph discussing Plaintiff['s] most recent cardiology appointment from May 2018, where her examination was normal and her medications were continued (Tr. 29, 696). Plaintiff admitted at the hearing that these conditions were "controlled pretty well" (Tr. 66).

(Docket Entry 14 at 15.) Thus, the ALJ's finding that Plaintiff's cardiac impairments remained "controlled with conservative measures" (Tr. 29) provides no basis to disturb the ALJ's RFC determination.

24

she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford, 734 F.3d at 293 (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted).

"In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify."). "An impairment or combination of impairments medically equals a listing when it is at least equal in severity and duration to the criteria of any listed impairment." Grimes v. Colvin, No. 1:14CV891, 2016 WL 1312031, at *4 (M.D.N.C. Mar. 31, 2016) (unpublished) (Osteen, Jr., C.J.) (citing 20 C.F.R. § 416.926(a)-(b)); see also Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of medical equivalence must be based on medical evidence only." (citing 20 C.F.R. § 404.1529(d)(3)) (emphasis added)). "A claimant cannot

25

qualify for benefits under the 'equivalence' step by showing that the overall _functional_ impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." _Zebley_, 493 U.S. at 531 (emphasis added).

"[O]nly where there is _ample_ evidence in the record to support a determination that a claimant's impairment meets or equals one of the listed impairments must the ALJ identify the relevant listed impairments and compare them to evidence of a plaintiff's symptoms." _Reynolds v. Astrue_, No. 3:11CV49, 2012 WL 748668, at *4 (W.D.N.C. Mar. 8, 2012) (unpublished) (emphasis added) (citing _Cook v. Heckler_, 783 F.2d 1168, 1172-73 (4th Cir. 1986)); _see also Russell v. Chater_, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("_Cook_, however, does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases.").[8]

---

[8] The _Cook_ court's confinement of the ALJ's duty to explicitly identify listings and compare their elements to the record to situations in which the claimant comes forward with "ample evidence" that an impairment meets a listing makes sense. "Step two of the [SEP] is a threshold question with a de minimis severity requirement," _Felton-Miller v. Astrue_, 459 F. App'x 226, 230 (4th Cir. 2011) (citing _Bowen v. Yuckert_, 482 U.S. 137, 153-54 (1987)), but "[t]he criteria in the medical listings [at step three] are demanding and stringent," _Falco v. Shalala_, 27 F.3d 160, 162 (5th Cir. 1994) (internal quotation marks omitted); _see also Zebley_, 493 U.S. at 532 ("[The Social Security Administration] has set the medical criteria defining the listed impairments at a higher level of severity than the statutory [disability] standard."). Accordingly, the mere fact that an impairment qualifies as severe at step two does not suggest that it meets a listing at step three. No reason thus exists for courts to require ALJs to document the manner in which every impairment deemed severe at step two fails to meet a listing at step three; rather, common sense supports the Fourth Circuit's decision in _Cook_ to insist that ALJs discuss a specific listing only when the claimant marshals "ample evidence" that an impairment actually meets the criteria
(continued...)

26

For Listing 1.04A, a claimant must offer proof not only of a "[d]isorder[] of the spine," such as "degenerative disc disease," but also "result[ant] compromise of a nerve root," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04, and:

> [e]vidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Id., § 1.04A. "Listing 1.04A requires a claimant to show only what it requires him [or her] to show: that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." Radford, 734 F.3d at 294. In other words, a "claimant need not show that each symptom was present at precisely the same time — i.e., simultaneously — in order to establish the chronic nature of his [or her] condition[, n]or need a claimant show that the symptoms were present in the claimant in particularly close proximity." Id.; see also Social Security Acquiescence Ruling 15-1(4), Radford v. Colvin: Standard for Meeting the Listing for Disorders of the Spine with Evidence of Nerve Root Compression, 2015 WL 5697481, at *5 (Sept. 23, 2015) ("AR ") (providing that

---

[8] (...continued)
for that listing. Nor does the more recent ruling in Radford counsel otherwise. Although the Fourth Circuit there remanded due to an ALJ's "insufficient legal analysis" at step three, it did so consistently with the standard set in Cook, as the record contained "probative evidence strongly suggesting that [the claimant] me[t] or equal[ed] a particular listing]." Radford, 734 F.3d at 295.

ALJs must "decide whether the evidence shows that <u>all</u> of the medical criteria in paragraph A [of Listing 1.04] are present <u>within a continuous 12-month period</u>" (emphasis added)).

In this case, the ALJ neither specifically mentioned Listing 1.04A in his decision (stating only that he "assessed the claimant's impairments under §1.00 Musculoskeletal System" (Tr. 27 (emphasis omitted))), nor provided any specific, evidence-based analysis supporting his finding that Plaintiff's impairments did not meet or equal the criteria of any listings (finding generally that "the medical evidence falls short of the criteria of the section, and no medical source has mentioned findings equivalent in severity to the criteria of any listed impairment" (<u>id.</u>)). However, the ALJ's omission of such analysis remains harmless under the facts presented here because, as discussed more fully below, Plaintiff cannot show "there is <u>ample evidence</u> in the record to support a determination that [she] met or equal[]ed" Listing 1.04A, <u>Cook</u>, 783 F.2d at 1172 (emphasis added).

The record demonstrates that Plaintiff suffered from lumbar degenerative disc disease (<u>see</u> Tr. 845 (Dr. Kramer's 5/24/17 diagnosis), 927 (Dr. Pool's 4/19/18 diagnosis)), resulting in compression of the left L5 nerve root (<u>see</u> Tr. 918 (Dr. Voytek's 3/16/18 assessment), 920 (3/1/18 lumbar MRI showing "disc bulge and left subarticular/foraminal disc protrusion with mild bilateral foraminal narrowing and contact upon the descending left L5 nerve root")), complaints of neuro-anatomic distribution of Plaintiff's

28

pain (see, e.g., Tr. 1058 (11/21/17 report of left-sided lower back pain radiating into left leg)), and one instance of limitation of motion in Plaintiff's lumbar spine (see Tr. 1086 (9/28/17 finding of "some" decreased lumbar range of motion due to pain)), all of which occurred within a continuous 12-month period from May 2017 to May 2018. However, the record reveals just one incidence of reflex loss in Plaintiff's right lower extremity (which would not correlate with her left-sided nerve root compression) (see Tr. 1034 (3/26/18 report)), only one mildly positive straight-leg raise test (without specification if sitting or supine) (see Tr. 845 (5/24/17)), and one report of decreased sensation in the left lower extremity which occurred outside of the continuous 12-month period specified above (see Tr. 1307 (10/8/18 office visit)). Moreover, although the record contains one occurrence of reduced strength in Plaintiff's left lower extremity during that 12-month period (see Tr. 1058 (11/21/17 finding of 4/5 strength in left leg)), "sensory or reflex loss" did not "accompan[y]" that "motor loss" as required by Listing 1.04A, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A.

As Plaintiff has not shown that "ample evidence [exists] in the record to support a determination that [she] met or equal[]ed" Listing 1.04A, Cook, 783 F.2d at 1172 (emphasis added), she has not

29

established entitlement to remand arising out of the ALJ's step three listing analysis.[9]

### III.  CONCLUSION

Plaintiff has established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion, to include re-evaluation and weighing of the NCDHHS decision in accordance with <u>Woods</u>.  As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) should be granted, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) should be denied.


                                    /s/ L. Patrick Auld
                                **L. Patrick Auld**
                        **United States Magistrate Judge**


February 2, 2021

---

[9] Plaintiff contends that "the ALJ's boilerplate rejection of [ L]isting [1.04A] was [not] harmless as it is not <u>inconceivable</u> that the listing could be met." (Docket Entry 15 at 6 (emphasis added) (citing <u>Suggs v. Astrue</u>, No. 4:11CV128, 2013 WL 466406, at *4 (E.D.N.C. Feb. 7, 2013) (unpublished)).)  However, neither case law nor the SSA's regulations and policies require an ALJ to specifically analyze every listing where a "[]conceivable" possibility exists, no matter how remote, that a claimant could meet or equal that listing.  Rather, as discussed above, "only where there is <u>ample evidence</u> in the record to support a determination that a claimant's impairment meets or equals one of the listed impairments must the ALJ identify the relevant listed impairments and compare them to evidence of a plaintiff's symptoms." <u>Reynolds</u>, 2012 WL 748668, at *4 (emphasis added) (citing <u>Cook</u>, 783 F.2d at 1172-73).